

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 22, 1952

Hon. Larry O. Cox
Executive Director
Board for Texas State Hospitals
  and Special Schools
Austin, Texas

Opinion No. V-1527

Re: Construction of Texas
Constitution, Article
XVI, Sections 12, 33,
and 40, as applied to
certain employees and
contractors who are
receiving compensation
from the United States.

Dear Mr. Cox:

You have requested the opinion of this office on the following questions:

1. Is it in violation of the Constitution to employ and pay a part-time employee at the Big Spring State Hospital who is also drawing pay as an enlisted man in the armed services of the United States?

2. Is it in violation of the Constitution to retain on our payroll a doctor who in no way neglects his duties to the State of Texas but who does, after duty hours, act as an independent contractor for the Veterans Administration (in this instance Dr. Roy C. Sloan of the Big Spring State Hospital) without monetary profit being received from the Veterans Administration for his services?

3. If your answer to question number two above is in the affirmative, would it differ if Dr. Sloan drew compensation from the Veterans Administration?

4. Is it in violation of the Constitution for the Big Spring State Hospital to utilize the services of an independent contractor and pay him not as an employee but on a purchase voucher, when such a person is on the payroll of the Veterans Administration as an employee? (E.g., Dr. C. W. Atherton.)

5. Is it in violation of the Constitution for the Big Spring State Hospital to utilize the services of an independent contractor and pay him not as an employee but on a purchase voucher, when such a person is in private practice and is not an employee of the Veterans Administration but does draw compensation from the Veterans Administration as an independent contractor as consultant? (E.g., Dr. J. C. Banker.)

6. Is it in violation of the Constitution for the Mexia State School and Home to retain on its payroll four employees who are ex-servicemen of World War II, who are attending Veterans Administration School at night and, of course, drawing compensation from the Veterans Administration for such training?

7. In construing both Sections 33 and 40 of Article XVI, is it unconstitutional to employ any of the above categories of persons when they are presently in the National Guard, the National Guard Reserve, or the Organized Reserves of the United States?

There are three sections of Article XVI of the Texas Constitution which relate to the subject matter of these questions. Section 12 states:

"No member of Congress, nor person holding or exercising any office of profit or trust, under the United States, or either of them, or under any foreign power, shall be eligible as a member of the Legislature, or hold or exercise any office of profit or trust under this State."

Section 33 provides:

"The Accounting Officers of this State shall neither draw nor pay a warrant upon the Treasury in favor of any person, for salary or compensation as agent, officer or appointee, who holds at the same time any other office or position of honor, trust or profit, under this State or the United States, except as prescribed in this Constitution. Provided, that this restriction as to the drawing and paying of warrants upon the Treasury shall not apply to officers of the National Guard of Texas,

the National Guard Reserve, the Offi-
cers Reserve Corps of the United States,
nor to enlisted men of the National
Guard, the National Guard Reserve, and
the Organized Reserves of the United
States, nor to retired officers of the
United States Army, Navy, and Marine
Corps, and retired warrant officers and
retired enlisted men of the United
States Army, Navy, and Marine Corps."

And Section 40 says:

"No person shall hold or exercise,
at the same time, more than one Civil
Office of emolument, except that of Jus-
tice of Peace, County Commissioner, No-
tary Public and Postmaster . . . /plus
the same military personnel listed in
Section 33/, unless otherwise specially
provided herein. Provided, that nothing
in this Constitution shall be construed
to prohibit . . . /same military per-
sonnel listed in Section 33/ from hold-
ing in conjunction with such office any
other office or position of honor, trust
or profit, under this State or the
United States, or from voting at any
Election; General, Special or Primary,
in this State when otherwise qualified."

Thus, Section 12 prohibits a person from
holding "any office of profit or trust" under the
State of Texas if that person holds such an office
under the United States, another state of the Union,
or a foreign power; Section 40 prohibits the hold-
ing of more than one "civil office of emolument"
whether in the state or federal government, certain
civil and military offices or positions of "honor,
trust or profit" excepted; and Section 33 prohibits
payments of salary or compensation from the State
Treasury to agents, officers or employees of the
State who at the same time hold another "office or
position of honor, trust or profit" under the state
or federal government, certain military personnel
excepted.

In answer to your first question, we call
your attention to two opinions of the Texas Supreme

Court which involved the exceptions in favor of certain military personnel. <u>Carpenter v. Sheppard</u>, 135 Tex. 413, 145 S.W.2d 562 (1940), cert. den. 312 U.S. 697; <u>Cramer v. Sheppard</u>, 140 Tex. 271, 167 S.W.2d 147 (1942).

In the first case, Carpenter, the Chairman and Executive Director of the Texas Unemployment Compensation Commission, was commissioned and on active duty in the Army of the United States as a result of being ordered to service as an officer of the National Guard. The Supreme Court held that he remained an officer of the National Guard within the meaning of the exceptions in Sections 33 and 40 and, therefore, had not vacated his civil office; that his military appointment did not violate Section 12 of Article XVI of the Constitution; and that mandamus would lie to compel payment of his salary as a state officer.

The <u>Cramer</u> case concerned the existence of an office of temporary district judge, which existence depended on the status of the regular judge. The regular judge, who had received a temporary commission and was on active duty in the Army of the United States, was held by the Supreme Court to have been commissioned in the "Officers Reserve Corps" within the meaning of Sections 33 and 40. For this reason the Court held that he was excepted from the prohibitions of those sections, that he had not abandoned his civil office by accepting the commission, and that mandamus would lie on behalf of his successor to compel payment of the successor's salary as temporary judge. The Court expressly pointed out that the exceptions to Sections 33 and 40 are not limited by but must control Section 12:

"Any other construction would render the amendments to Sections 33 and 40 meaningless, and would mean that their adoption by the people was an idle gesture. Then, too, if it be contended that the amendments to Sections 33 and 40 are in conflict with Section 12 of Article 16, it must be noted that such amended sections, Nos. 33 and 40, are the latest expression of the will of the people, and any provisions of the Constitution previously existing must, in case of conflict, yield to them. State v. Brownson, 94 Tex. 436, 61 S.W. 114; Gillespie v. Lightfoot, 103 Tex. 359, 127 S.W. 799." (167 S.W.2d at 152.)

Your opinion request and accompanying correspondence describe the enlisted men referred to in your first question as "part-time employees." The Assistant Auditor describes them as "part-time attendants." We conclude that the nature of their relationship with the State is that of employment rather than a relationship in the nature of an "office," and, therefore, that none of them hold "an office of profit or trust" or "a civil office of emolument" within the prohibitions of Sections 12 and 40, respectively. Att'y Gen. Ops. V-303 (1947), O-5349 (1943). Cf. Lowe v. State, 83 Tex. Crim. 134, 201 S.W. 986 (1918).

However, each of these enlisted men receives from the State salary or compensation as an employee, and this office has construed the term "appointee," as used in Section 33, to be a synonym of the term employee. Att'y Gen. Op. O-2607 (1940). Therefore, the prohibition of Section 33 may apply to these employees, depending on the answers to two remaining questions: Is their enlisted status a "position of honor, trust or profit, under . . . the United States"? If their enlisted status is such a position, are any of these men within the exceptional categories enumerated in Section 33?

There are no judicial authorities in point on the first question. The Carpenter and Cramer cases both concerned commissioned officers. But this office has previously held that Section 33 prohibited payment of twelve days' "vacation pay" to an enlisted man who was "drafted for service in the United States Army" from State employment. Att'y Gen. Op. O-3335 (1941). After quoting Section 33, that opinion concludes:

"From the above it is clear, without argument, that unless a man falls within one of the exceptions provided in the second sentence the Comptroller cannot issue him a warrant in consideration of any employment by the State subsequent to the time he is enlisted in the Army, whether as an officer or a private."

A fact determination of whether any of the enlisted men who have been employed at the Big Spring State Hospital fall within the exceptions enumerated in Section 33 cannot be made by this office from the information furnished us. In making this determination for

yourself, you are advised that it is not a violation of the Constitution to employ and compensate from the State Treasury enlisted men of the National Guard, the National Guard Reserve, the Organized Reserves of the United States, or enlisted men who are retired from the United States Army, Navy, or Marine Corps. And, under the holding of the Carpenter case, men who were inducted into the service while in any of the above categories are excepted within the meaning of Section 33, regardless of the fact that they may be classified at present in a category not enumerated in Section 33. You are also advised that it is constitutional to employ and pay such enlisted men even if they are not excepted from Section 33 provided they are paid from local funds rather than from funds in the State Treasury. Letter Opinion dated May 19, 1947 to Hon. Gibb Gilchrist. As pointed out in that opinion, it is the view of this office that Section 33 applies only to payments from funds in the State Treasury.

Your second, third, fourth and fifth questions concern the effect of Sections 12, 33, and 40 on the practice of medicine by independent contractors. As a matter of interpretation, this office holds the view that one whose true relation is that of independent contractor does not occupy an "office of profit or trust" under Section 12, nor a "civil office of emolument" under Section 40, nor does he occupy the status of "agent, officer or appointee" or hold an "office or position of honor, trust or profit" under Section 33. Consequently, these constitutional restrictions do not affect services that are rendered by independent contractors. This view is adopted in Attorney General's Opinions V-303 (1947) and V-345 (1947). The reasoning and authorities in support of this conclusion are set out with great care in those opinions, especially Opinion V-303, and they need not be repeated here.

You predicated each of your original questions on the assumption that the doctors inquired about are in fact acting as independent contractors in rendering the "extra-curricular" service. In your supplemental request you asked the following:

"In addition to the advice sought in questions two, three, four, and five, we desire the opinion of your office as to whether or not Dr. Roy C. Sloan is an

independent contractor with the Veter-
ans Administration; whether or not Dr.
C. W. Atherton is an independent con-
tractor with the Big Spring State Hos-
pital; and whether or not Dr. J. C.
Banker is an independent contractor
with the Veterans Administration and/or
the Big Spring State Hospital."

The existence of the status of independent
contractor depends upon the actual relationship be-
tween the contractor and those with whom he contracts.
As pointed out in Opinion V-303, the Supreme Court in
Industrial Indemnity Exchange v. Southard, 138 Tex.
531, 160 S.W.2d 905, 907 (1942), has summarized the
most important factual tests as follows:

"The general rule relating to inde-
pendent contractors rests upon certain
recognized tests; although such tests are
not necessarily concurrent with each
other, nor is each test in itself con-
trolling. Such tests are:  (1) The in-
dependent nature of his business; (2)
his obligation to furnish necessary tools,
supplies, and material to perform the job;
(3) his right to control the program of
the work, except as to final results; (4)
the time for which he is employed; and
(5) the method of payment, whether by time
or by the job."

You have furnished us the following informa-
tion about the actual relationship between the several
doctors and the institutions they serve:

" . . . Dr. Sloan's status with the
Veterans Administration Hospital is that
of consultant in neurology and psychiatry.
He is not a member of the staff and does
not take actual charge of any patients but
acts strictly in an advisory capacity, de-
liberating with and counselling the patients
of staff physicians at their request. He
furnishes his own tools, consisting of a
stethoscope and hammer, and no supplies are
used. His consultations are held only at
nights and on holidays when he is officially
off duty at the Big Spring State Hospital

and only at such times as he may be called.  He receives a fee of $50.00 per consultation, regardless of the time expended, and he is paid from Veterans Administration Fee Basis and Contractual Service Funds.

" . . . Dr. Atherton's status at the Big Spring State Hospital is that of consultant in clinical and gross pathology.  He is not a member of the hospital staff, and he personally furnishes whatever tools are required in connection with his work at the hospital, which consists of advising, deliberating, and counselling with staff physicians in connection with post-mortem examinations. He accepts consultation only at nights and on holidays when he is officially off duty from the Veterans Administration Hospital.  His compensation consists of $12.50 per consultation which is paid by purchase voucher from the Big Spring State Hospital.

"Dr. J. C. Banker is a radiologist at the Malone-Hogan Clinic in Big Spring and is a member of the staff.  His tools and supplies used there are furnished him by the clinic.  He is responsible for the complete care and treatment of those patients assigned to him at the clinic.  He is employed by the clinic on a full-time basis, but his financial arrangements with the clinic are, of course, unknown to this office.  Dr. Banker's status with the Veterans Administration Hospital is of consultant in radiology.  He is not a member of the hospital staff and does not take actual charge of any patients but acts only in an advisory capacity.  No tools or supplies are involved since his work consists of reading X-ray films and consulting with the staff physicians with regard to Roentgenological technique.  He accepts intermittent calls for consultation and receives a fee of $50.00 per consultation, regardless of the time expended, which fee is paid from Veterans Administration Fee Basis and

Contractual Service Funds.  Dr. Bankers's status at the Big Spring State Hospital is that of consultant in radiology.  He is not a member of the hospital staff and does not take actual charge of patients. His duties consist of reading X-ray films with the staff physicians and consulting with them with regard to Roentgenological techniques.  No tools or supplies are used.  He is available for consultation only when called and receives a fee of $37.50 per consultation, regardless of the time expended, which fee is paid by purchase voucher from the Big Spring State Hospital."

Based on an application of the above facts to the tests approved in the Southard case, supra, it is the opinion of this office that Dr. Roy C. Sloan is an independent contractor with the Veterans Administration, that Dr. C. W. Atherton is an independent contractor with the Big Spring State Hospital, and that Dr. J. C. Banker is an independent contractor with both the Veterans Administration and the Big Spring State Hospital.  Your second question becomes hypothetical in view of the statement above which indicates that Dr. Sloan does in fact receive compensation from the Veterans Administration.

In re-affirming the view adopted in Opinion V-303 and in holding that doctors are rendering the described consulting services as independent contractors, we feel compelled to point out that a number of earlier opinions of this office holding unconstitutional certain dual medical services did not consider the possibility that service might be rendered by an independent contractor outside the prohibitions of Sections 12, 33, and 40.

We refer to Opinions O-2607 (1940), O-3061 (1941), O-3788 (1941), O-5349 (1943), and O-5525 (1943). None of these opinions need be overruled because each appears to be a correct holding on the facts submitted. It is apparent, however, that most of the dual services held unconstitutional in these opinions could, with but slight change in the facts, be held permissible under Opinion V-303.

Your sixth question, concerning the ex-
servicemen employed at Mexia State School and Home,
raises one issue: Does a trainee attending a Veter-
ans Administration night school, who is drawing com-
pensation for such training, hold an "office of
profit or trust," a "civil office of emolument," or
an "office or position of honor, trust or profit,
under . . . the United States" within the meaning
of Sections 12, 40, and 33, respectively?

We think it is obvious that these veter-
ans are not officers of the United States within the
meaning of Sections 12, 33, and 40. Hence the only
issue raised relates to Section 33: Does a veteran
pursuing such training hold a "position of honor,
trust or profit" under the United States:

The training or schooling of veterans of
World War II at the expense of the United States is
authorized in Veterans Regulations promulgated pur-
suant to Chapter 12, Title 38 of the United States
Code. Title 38 codifies the federal legislation
dealing with "Pensions, Bonuses, and Veterans' Re-
lief." You did not indicate in your opinion request
whether the veterans inquired about were being trained
under Part VII (Vocational Rehabilitation) or Part
VIII (Education of Veterans) of Veterans Regulation
No. 1(a), promulgated under 38 U.S.C.A., Chapter 12.
But in either event the payments received during
training are "subsistence allowance" granted to the
trainee during his satisfactory continuation of train-
ing according to specified conditions. None of those
conditions require work or service by the trainee for
or on behalf of the government. The allowance is def-
initely not a wage or salary. All of the benefits
provided in Title 38 are in the nature of gratuities
made available by Congress to persons who have ren-
dered past services in the nation's military forces.
None of the benefits are granted as wages or salary
in return for present or future work or services for
the country. In no sense can it be said that there
exists an employment relationship between the gover-
ment and benefited veterans by virtue of any of the
provisions of Title 38.

Therefore, it is the opinion of this office
that a veteran pursuing a course of study or training
at the expense of the United States, during which he
receives a subsistence allowance, is not holding a

"position of honor, trust or profit, under . . . the United States" within the meaning of Section 33.

In answer to your seventh question, you are advised that by virtue of Sections 33 and 40 it is constitutional for the State to employ persons in the categories inquired about by you, who are presently in the National Guard, the National Guard Reserve, or the Organized Reserves of the United States. <u>Carpenter v. Sheppard</u>, <u>supra</u>; <u>Cramer v. Sheppard</u>, <u>supra</u>.

## SUMMARY

It is not a violation of Article XVI, Sections 12 and 40, Constitution of Texas, to pay from the State Treasury employees at the Big Spring State Hospital who are also drawing pay as enlisted men in the armed services of the United States. However, such employees are prohibited by Section 33 of this Article from being paid from the State Treasury for this employment, unless they were members of the National Guard, the National Guard Reserve, or the Organized Reserves of the United States when they were inducted into the service or unless they are members of such units at the present time or unless they are retired from the military service of the United States.

The Texas Constitution imposes no prohibitions against engaging or paying for services rendered to the State by physicians as independent contractors.

It is no violation of the Texas Constitution for the Mexia State School and Home to retain on its payroll employees who are ex-servicemen of World War II attending Veterans Administration school and who draw subsistence allowance during such training. Likewise, it is constitutional to employ at a State institution and to compensate from the State Treasury persons who are presently in the National Guard,

the National Guard Reserve, or the Organized Reserves of the United States.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

By *Phillip Robinson*
Phillip Robinson
Assistant

PR:wb